Argued and submitted November 19, 1986, affirmed December 9, 1987

## STATE OF OREGON,
*Respondent,*

*v.*

## GARY DEAN STEINKE,
*Appellant.*

(M 45-2350; CA A40228)

746 P2d 758

Stephen Shurin, Portland, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

Newman, J., dissenting.

**DEITS, J.**

Defendant was convicted of driving under the influence of intoxicants. He contends that the court erred in denying his motion to suppress. We affirm.

On November 8, 1984, at approximately 11:30 p.m., Deputy Sheriff Smith received a report of a restraining order violation on S.E. Powell Blvd. in Portland. The suspect was reportedly driving a silver Pontiac Trans Am. Smith was southbound on 122nd when he saw a vehicle matching the description of the vehicle traveling northbound. He was about nine blocks west and ten blocks north of the apartment where the alleged violation had occurred. Smith turned his patrol car around and stopped defendant's vehicle. He had seen no other silver Trans Ams between the time when he received the call and the stop. Smith learned after stopping defendant that the restraining order was invalid, because defendant had not been served. However, he cited him for driving under the influence of intoxicants. ORS 813.010.

■  Defendant assigns as error the denial of his motion to suppress, arguing that Smith was not justified in stopping him. He asserts that ORS 131.615[1] does not provide authority for the stop because, in order to justify a stop under that statute, an officer must suspect that a person has committed a crime, and violation of a restraining order is not a "crime."

It is unnecessary to address the issue of whether violation of a restraining order is a crime, because there is separate statutory authority for the stop. ORS 131.615 is not the sole authority for stops based on less than probable cause. *Nelson v. Lane County,* 304 Or 97, 743 P2d 692 (1987). In *Nelson,* the court did not accept the state's argument that ORS 181.030, a general statute charging the police with the duty to enforce criminal laws to "prevent crime," provided authority for the police to conduct roadblocks. However, in this case, although the legislature has not expressly granted authority to the police to stop a suspected violator of a restraining order, in view of the requirement that officers must arrest persons who violate those orders, ORS

---

[1] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person * * *."

133.310(3),[2] it is reasonable and necessary to imply the authority to stop persons reasonably suspected of doing that.

We addressed a similar issue in *State v. Morris,* 56 Or App 97, 102, 614 P2d 77, *rev den* 293 Or 340 (1982), where we held that the curfew statute, ORS 419.760,[3] which explicitly grants authority to take minors who violate ORS 419.710 into custody, implicitly authorizes officers to stop persons reasonably suspected of being minors in violation of curfew laws. In this case, the legislature has recognized the strong public interest in preventing domestic abuse by enacting a statute which *requires* officers to "arrest" persons who violate restraining orders and by providing a statutory tort claim to those intended to be protected by the order against officers failing to do so. *Nearing v. Weaver,* 295 Or 702, 670 P2d 137 (1983). In view of the clear indication of legislative intent to provide authority to prevent domestic abuse, it is reasonable to construe this statute as implicitly authorizing officers to stop persons reasonably suspected of violating a restraining order.

■ ■ Defendant next argues that there were insufficient articulable facts developed in the record to support a reasonable suspicion that defendant was the person who had purportedly violated the restraining order. Although we have not decided the issue of whether the violation of a restraining order is a "crime," the case law discussions of stops on suspicion of having committed a crime are helpful. When an officer makes a stop to investigate the possibility that a crime has been committed, he must have a reasonable, articulable basis

---

[2] ORS 133.310(3) provides:

"A peace officer shall arrest and take into custody a person without a warrant when the peace officer has probable cause to believe that:

"(a) There exists an order issued pursuant to ORS 107.095(1)(c) or (d), 107.716 Or 107.718 restraining the person;

"(b) A true copy of the order and proof of service on the person has been filed as required in ORS 107.720; and

"(c) The peace officer has probable cause to believe that the person to be arrested has violated the terms of that order."

[3] ORS 419.760 provides:

"Any minor who violates ORS 419.710 or an ordinance established under ORS 419.750 may be taken into custody as provided in ORS 419.569 and may be subjected to further proceedings as provided in ORS 419.472 to 491.597, 419.800 to 419.839 and 419.990(2)."

under the totality of the circumstances for suspecting that the stopped person has committed a crime. *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977); *State v. Norman,* 66 Or App 443, 674 P2d 626, *rev den,* 296 Or 712 (1984). However, if an officer knows that a crime has just been committed, a stop may be justified on fewer articulable facts than if the officer is inquiring generally into the possible commission of a crime. *State v. Ponce,* 43 Or App 665, 668, 603 P2d 1243 (1979). The question then is not whether the officer reasonably suspects that a crime has been committed, but' whether he reasonably suspects that the stopped person is connected with the crime. *State v. Ott,* 54 Or App 309, 313, 634 P2d 825, *rev den* 292 Or 334 (1981).

■ A similar analysis is applicable in determining if a stop for suspicion of a violation of a restraining order is justified. Smith had been advised by the police dispatcher that a restraining order violation had occurred at a particular address by a person driving a specifically described type of vehicle. While enroute and in close proximity to the scene, shortly after receiving the dispatch, Smith observed defendant's vehicle traveling on what he testified was the "easiest route" away from the scene and stopped it. It matched the description of the suspect's vehicle and was the only such vehicle that Smith had observed following the dispatch. We hold that the facts justified the stop.

Defendant also argues that because the information transmitted to Smith concerning the existence of a valid restraining order was erroneous, the stop was tainted. That argument is without merit. *State v. Perry,* 39 Or App 37, 42, 591 P2d 379 (1979); *State v. Somfleth,* 8 Or App 171, 177, 492 P2d 808, *rev den* (1972). Smith was entitled to rely on the official dispatch.

Affirmed.

**NEWMAN, J.,** dissenting.

Assuming, as does the majority, that ORS 131.615 is inapplicable, because the police did not reasonably suspect that defendant had committed a crime, there is no statutory authorization for the stop.

The majority, however, concludes that ORS 133.310(3) *impliedly* authorizes such a stop. It relies on *State*

*v. Morris,* 56 Or App 97, 641 P2d 77, *rev den* 293 Or 340 (1982), where we stated:

> "[T]he legislature, in enacting a curfew statute, intended police officers to have authority to stop persons suspected of being minors violating curfew laws, and that ORS 131.615 is not the exclusive authority for peace officers stopping persons." 56 Or App at 102.

The court then held that the stop was constitutional. It analyzed the *constitutional* issues by balancing "society's interest in the well-being of its youth" against "the minimal intrusion upon defendant's Fourth Amendment rights for the purposes of determining his age and activities." 56 Or App at 104.

Nothing in *Morris* supports the majority's *statutory* conclusion that ORS 133.310(3) impliedly authorizes police officers to stop persons reasonably suspected of violating abuse prevention restraining orders. ORS 133.310(3) authorizes a police officer to "arrest and take into custody a person without a warrant when the police officer has probable cause to believe" that the person has violated an existing abuse prevention restraining order. In *Morris,* however, the text of the curfew statute that the court there considered refers to ORS 419.569, which provides for *temporary custody* under certain circumstances and does *not* contain the explicit language of ORS 133.310(3) regarding arrest and probable cause.

Moreover, we should also look to other provisions of ORS 133.310. ORS 133.310(1) provides:

> "A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed any of the following:
>
> "a.  A felony;
>
> "b.  A Class A misdemeanor."

The language of ORS 133.310(3) parallels the language of ORS 133.310(1) in its reference to the authority of a police officer to *arrest* without a warrant if the officer has *probable cause to believe* that the person has engaged in the prohibited behavior.

If ORS 133.310(3) impliedly authorizes a police officer, without further statutory authorization, to stop a person reasonably suspected of violating an abuse prevention order, why would not ORS 133.310(1) also authorize a peace

officer to stop a person whom he reasonably suspects has committed a crime without the statutory authorization contained in the provisions of ORS 131.615? In neither *Nelson v. Lane County,* 304 Or 97, 743 P2d 692 (1987), nor *State v. Tourtillott,* 289 Or 845, 618 P2d 423 (1980), did the Supreme Court suggest that ORS 131.615 is superfluous. It is not. ORS 133.310(1) does not support the implication that the legislature implicitly authorized stops based on reasonable suspicion, and neither does ORS 133.310(3).

I dissent.